IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ESTATE OF DALE A. YOUNG, ) | |
| ) | Case No. CV-07-277-N-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM** |
| v. ) | **DECISION AND ORDER** |
| ) | |
| COUNTY OF BOUNDARY; BOUNDARY ) | |
| COUNTY SHERIFF'S DEPARTMENT; ) | |
| SHERIFF GREG SPRUNGL and JANE ) | |
| DOE SPRUNGL, Husband and Wife; ) | |
| DEPUTY CAROL NEGLEY and JOHN ) | |
| DOE NEGLEY, Husband and Wife; ) | |
| OFFICER KATHY VANDENBURG, and ) | |
| JOHN DOE VANDENBURG, Husband and ) | |
| Wife; CITY OF BONNERS FERRY; ) | |
| BONNERS FERRY POLICE ) | |
| DEPARTMENT; CHIEF DAVID ) | |
| KRAMER and JOHN DOE KRAMER, ) | |
| Husband and Wife; SGT. FOSTER MAYO ) | |
| and JANE DOE MAYO, Husband and Wife;) | |
| OFFICER DON PARDOW and JANE DOE ) | |
| PARDOW, Husband and Wife, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Reconsider (Docket No. 10),

Plaintiff's Motion to Supplement (Docket No. 12), Defendants' Motion for

Summary Judgment (Docket No. 15), and Defendants' Motion to Strike Hearsay

**Memorandum Decision and Order - 1**

(Docket No. 37). The Court heard oral argument on the motions on July 9, 2008, and now issues the following decision.

## BACKGROUND

At approximately 11:36 p.m. on June 24, 2005, Bonners Ferry Police Department ("BFPD") Officers Foster Mayo and Donald Parlow arrested Dale Young for possession of a controlled substance. The officers took Young to the Boundary County Detention Facility for booking. Prior to arriving at the detention facility, Officer Parlow dropped Officer Mayo off at the BFPD. Officer Parlow arrived at the detention facility with Young at approximately 12:35 a.m. on June 25, 2005.

After Officer Parlow conducted a search of Young, Boundary County Sheriff's Office Booking Deputies Kathleen Vanmeter (known as Kathleen Vandenburg at the time of the incidnet) and Carol Negley booked Young into the detention facility. The deputies completed the booking process at approximately 1:20 a.m. At approximately 1:21 a.m. Young asked for permission to call his girlfriend Terri Thomas. After speaking with Young, Thomas asked to speak with one of the deputies, and the call was transferred to Deputy Negley. Thomas told Negley that Young had taken "a bunch of stuff" and needed to be taken to the hospital. Young then told Deputy Negley that he had told Thomas that he had

**Memorandum Decision and Order - 2**

taken one-fourth of an ounce of methamphetamine when Officers Parlow and Mayo pulled him over because he was afraid of being caught with the drugs.

Upon learning about Young's use of methamphetamine, Deputy Negley called dispatch and had them request that Officer Parlow return to the detention facility and transport Young to the hospital. Dispatch contacted Officer Parlow at approximately 1:30 a.m. Officer Parlow arrived at the detention facility at approximately 1:35 a.m and transported Young to the hospital, arriving at the hospital at approximately 1:41 a.m. Exam and treatment of Young began at approximately 1:46 a.m. At approximately 5:08 a.m., Young went into cardiac arrest and died at 5:47 a.m. The Estate of Dale A. Young then filed this lawsuit.

## ANALYSIS

### I.   Motion to Strike Hearsay

Defendants move to strike the attachments to the Affidavit of Ted Pulver. The attachments include an interview of Sanain, an interview of Gernaro Arevalo, and a memorandum. (Docket No. 29). Defendants contend that the attachments contain hearsay. Plaintiff failed to respond to the motion.

Under the Local Rules of this Court, failure to file a response to a motion in a timely manner "may be deemed to constitute a consent to the . . . granting of said

motion. . . ." (Local Rule 7.1(e)). Accordingly, the Court will grant the motion to strike.

## II. Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**Memorandum Decision and Order - 4**

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary

**Memorandum Decision and Order - 5**

judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.*  The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

### III.  Defendants' Motion for Summary Judgment

Defendants seek summary judgment on Plaintiff's federal and state claims. For the reasons explained below, the Court will grant the motion.

#### A.  Federal Claims – Qualified Immunity

Defendants seek summary judgment based on qualified immunity. "Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?  Second, if so, was that right clearly established?  The relevant,

**Memorandum Decision and Order - 6**

> dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.

*Id.* (internal quotations and citations omitted). Thus, a district court should "concentrate at the outset on the definition of the constitutional right and determine whether, on the facts alleged, a constitutional violation could be found." *Billington v. Smith,* 292 F.3d 1177, 1184 (9th Cir. 2002) (internal quotations and citations omitted). If a constitutional violation can be found, the court then decides whether the violation was the source for clearly established law that was contravened in the circumstances of the case. *Id.*

### 1. Claims Against Officers

Plaintiff has asserted that the Officers' actions violated Young's 8th and 14th Amendment rights by denying Young proper medical treatment. Because Young was a pre-trial detainee, Plaintiff's claims for denial of medication or treatment are analyzed under the 14th Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535-36 (1979). This distinction is not of great significance, however, because the 14th Amendment analysis imposes the same duty as the 8th Amendment's protection against cruel and unusual punishment. *Frost v. Argos,* 152 F.3d 1124, 1128 (9th Cir. 1998). In order to establish a constitutional claim for denial of

**Memorandum Decision and Order - 7**

medication and treatment under the 14th Amendment, Plaintiff must satisfy both an objective and subjective component of a two-part test. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). First, the prisoner must demonstrate that the prison official deprived the prisoner of the "minimal civilized measure of life's necessities." *Id.* Second, a prisoner must demonstrate that the prison official "acted with deliberate indifference in doing so." *Id.* Deliberate indifference is a higher standard than mere negligence. *Toguchi v. Chung*, 391 F.3d 1051 (9th Cir 2004).

    In this case, Plaintiff's mere suggestion that it is probable that Young's symptoms were noticeable prior to his booking does not fulfill Plaintiff's burden. Plaintiff has presented no evidence that the officers were aware that Young exhibited any life-threatening symptoms during the arrest or transfer to the holding facility. In fact, the only admissible evidence offered in support of Plaintiff's assertions is the affidavit of Gernaro Arevalo. In that affidavit, Arevalo states that he was, "able to hear the goings-on in the booking area of the Boundary County Jail" on the night in question. (Arevalo Aff.). Arevalo then makes the following assertions: (1) during the booking process, Young informed the booking officer that Young had swallowed a controlled substance, and that he was not feeling well; (2) Young was allowed to make a phone call, during which he told whomever was

**Memorandum Decision and Order - 8**

on the other end of the call that he had swallowed a lethal amount of a controlled substance; and (3) after Young made his call, multiple calls came into the jail, and that after answering one of the calls, Officers Vandenberg and Negley began to contemplate medical treatment for Young.

Even accepting this testimony as true, the evidence is still well short of supporting a claim that the officers were deliberately indifferent to a serious medical need.  Arevalo's testimony does not include any time-line establishing a delay in medical treatment.  Moreover, Arevalo's testimony does not provide any information establishing that the officers were aware of Young having swallowed a lethal amount of methamphetamine before talking with Thomas.  To the contrary, based on the affidavits and depositions presented by Defendants, Young was transported to the emergency room immediately after the booking deputies became aware of the possible overdose.  (Parlow Aff., Vanmeter Aff.).  In fact, Young was at the Hospital within approximately ten to twelve minutes after learning about the potential overdose.  (Parlow Aff. 20-23; Vanmeter Aff. 11-15; Negley Aff. 16-20). Delivering a prisoner to the local hospital this soon after learning about a potential overdoes does not come close to rising to the level of acting with deliberate indifference in providing a prisoner with a minimal civilized measure of life's necessities.  *Hallett*, 296 F.3d at 744.

**Memorandum Decision and Order - 9**

Accordingly, the Court finds that Plaintiff has failed to establish that a constitutional violation occurred. Thus, the Court need not address whether the alleged violation was the source for clearly established law that was contravened in the circumstances of the case, and the Court will dismiss the claims against the individual officers.

### 2. Claims Against Supervising Officers

Supervising officers are not held liable in a section 1983 claim based on a respondeat superior theory as suggested by Plaintiff. *See Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) Instead, supervising officers will be held liable under section 1983 only if they play an affirmative part in the alleged deprivation of constitutional rights. *Id.* Because it is rare that a supervisor will be personally involved in the same way as individual officers on the scene, to be held liable, a supervising officer must "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* (internal citations and quotations omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). "Supervisory liability is imposed against a supervisory official in his individual capacity for [1] his own culpable action or inaction in the training, supervision, or control of his subordinates, [2] for his acquiescence in the constitutional deprivations of which

**Memorandum Decision and Order - 10**

the complaint is made, or [3] for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations and quotations omitted).

In this case, the only potential claim against a supervising officers rests upon the above assertions of a constitutional deprivation. As explained above, no such deprivation occurred. Accordingly, claims against the supervising officers shall also be dismissed.

### 3. Claims Against City and County

The Ninth Circuit has stated that "a failure to train police officers may serve as the basis for [municipal] liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (internal quotations and citations omitted). However, a municipality cannot be subject to §1983 liability for failure to train or supervise in the absence of an underlying constitutional violation. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Since Plaintiff has failed to establish such a violation, summary judgment in favor of the municipalities is also warranted.

**Memorandum Decision and Order - 11**

### B. Causation

Even if Plaintiff had shown that the Defendants conduct violated Young's constitutional rights, summary judgment would still be appropriate because Plaintiff has failed to set forth sufficient evidence of causation. There must be a causal connection between the alleged unconstitutional act and the harm suffered by the plaintiff. *Gibson et al. v. Weber et al.*, 433 F.3d 642, 646 (8th Cir. 2006).[1] "To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." *Id.* Here, Plaintiff failed to provide the Court with any medical evidence. Simply guessing that Young would not have died had he received treatment earlier is insufficient. Accordingly, even if a constitutional violation occurred, there is no evidence that it caused Young's death, and summary judgment is also warranted based on a lack of evidence of causation.

### C. State Law Claims

Defendants seek summary judgment on Plaintiff's state law claims. The Court will address each claim below.

---

[1] Defendants cite *Gibson* as a 9th Circuit case, when if fact, it is an 8th Circuit case. The Court cautions counsel not to misstate the precedential value of a case. However, although *Gibson* is an 8th Circuit case, the Court finds that the proposition for which it stands – that a plaintiff must produce medical evidence to establish that the delay in medical care had a detrimental effect – persuasive, and envisions that the 9th Circuit would adopt such reasoning if faced with the question.

**Memorandum Decision and Order - 12**

      **1.**     **Negligence Claim**

In Idaho, a governmental entity and its employees, while acting within the course and scope of their employment, shall not be liable for any claim which arises out of any act or omission providing or failing to provide medical care to a prisoner or person in the custody of any jail, detention center or correctional facility, so long as the employees acted "without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct" as defined in Idaho Code § 6-904C.  Idaho Code § 6-904B(5).  Section 904C defines "gross negligence" as "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others."  Idaho Code § 6-904C.  "Reckless, willful and wanton conduct is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result.  Id.

Construing the evidence in a light most favorable to the Plaintiff, it is clear that the officers in this case delivered Young to the local hospital within ten to twelve minutes of learning about his potential overdose.  Such actions do not rise

**Memorandum Decision and Order - 13**

to the level of malice or criminal intent, gross negligence or reckless, willful and wanton conduct. Accordingly, the Court will grant summary judgment in favor of Defendants with respect to Plaintiff's negligence claim.

### 2. Intentional Infliction of Emotional Distress Claim

In order to state a claim for intentional infliction of emotional distress, Plaintiff must show that (1) Defendants' conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there was a causal connection between the wrongful conduct and her emotional distress; and (4) the emotional distress was severe. *See Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 740 (Idaho 2003). To be extreme or outrageous, conduct has to be more than simply objectionable or unreasonable. *See Alderson v. Bonner*, 132 P.3d 1261, 1268 (Idaho App. 2006). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Edmondson*, 75 P.3d at 741.

Viewing the evidence in a light most favorable to the Plaintiff, the Court cannot conclude that the officer's actions, in delivering Young to the local hospital within matter of minutes of learning of a potential overdose, rises to the level of extreme or outrageous conduct. Accordingly, the Court will grant summary

**Memorandum Decision and Order - 14**

judgment in favor of Defendants with respect to Plaintiff's intentional infliction of emotional distress claim.

### III.   Motion to Reconsider

Plaintiff seeks reconsideration of the Court's earlier decision granting Plaintiff's motion to dismiss Plaintiff's state law claims pursuant to Idaho Code § 6-610. As discussed above, the Court is now dismissing the state law claims for other reasons. Accordingly, the motion to reconsider is moot.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Strike Hearsay (Docket No. 37) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Docket No. 15) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Reconsider (Docket No. 10) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement (Docket No. 12) shall be, and the same is hereby, DEEMED MOOT.

**Memorandum Decision and Order - 15**

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.



DATED: **August 14, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 16**